**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| CLOREY EUGENE FRANCE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 1:13CV250 |
| | ) | |
| FRANK L. PERRY,[1] | ) | |
| | ) | |
| Respondent. | ) | |

<u>**MEMORANDUM OPINION AND RECOMMENDATION**</u>
<u>**OF UNITED STATES MAGISTRATE JUDGE**</u>

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket Entry 2.) On March 30, 2011, in the Superior Court of Cabarrus County, a jury found Petitioner guilty of felonious breaking or entering, breaking or entering a motor vehicle, attempted first degree burglary, possession of housebreaking implements, misdemeanor possession of stolen goods, and obtaining habitual felon status, in cases 09 CRS 052770 and 052771. (Docket Entry 2, ¶¶ 1, 2, 4-6; <u>see also</u> Docket Entry 9-2 at 178-82.)[2] The trial court sentenced Petitioner in the presumptive range as an habitual felon to four consecutive terms of 116 to 149 months'

---

[1] Consistent with Rule 2(a) of the Rules Governing Section 2254 Cases, the undersigned previously deemed the Petition amended to name Kieran J. Shanahan, then-Secretary of the North Carolina Department of Public Safety, as Respondent. (Docket Entry 4 at 1 n.1.) Frank L. Perry currently serves in that position, <u>see</u> https://www.ncdps.gov/Index2.cfm?a=000003,000008,000153, 002681 (last visited Apr. 8, 2015), and, by operation of Federal Rule of Civil Procedure 25(d) (applicable to this proceeding pursuant to Rule 12 of the Rules Governing Section 2254 Cases), now appears as Respondent.

[2] For attachments to Respondent's memorandum in support of his instant Motion for Summary Judgment, pin citations refer to the page number in the footer appended to said document by the CM/ECF system.

imprisonment. (Docket Entry 2, ¶ 3; see also Docket Entry 9-2 at 183-90.)

With the aid of appellate counsel, Petitioner appealed his convictions (Docket Entry 2, ¶¶ 8, 9(a)-(f); see also Docket Entries 9-2, 9-3, 9-4, 9-5), and the North Carolina Court of Appeals found no error as to Petitioner's convictions for felonious breaking or entering, breaking or entering a motor vehicle, and attempted first degree burglary, but vacated his convictions for possession of housebreaking implements and misdemeanor possession of stolen goods, State v. France, 222 N.C. App. 635 (table), 731 S.E.2d 274 (table), No. COA12-50, 2012 WL 3573920 (Aug. 21, 2012) (unpublished). Petitioner did not thereafter submit a certiorari petition to the North Carolina Supreme Court. (See Docket Entry 2, ¶ 9(g).)

Petitioner then filed a motion for appropriate relief ("MAR") with the state trial court (Docket Entry 2, ¶ 11(a)(1)-(6); see also Docket Entry 9-14), which that court denied (Docket Entry 2, ¶ 11(a)(7), (8); see also Docket Entry 9-11). Petitioner sought review of his MAR's denial by filing a certiorari petition in the North Carolina Court of Appeals (Docket Entry 2, ¶ 11(b)(1)-(6); see also Docket Entry 9-12), which that court denied (Docket Entry 2, ¶ 11(b)(7), (8); see also Docket Entry 9-13).

Petitioner subsequently submitted his instant Petition to this Court. (Docket Entry 2.) Respondent moved for summary judgment on the merits (Docket Entry 8) and Petitioner responded

in opposition (Docket Entry 11), and also filed a "Motion for Leave to Expand the Record" (Docket Entry 12), "Motion for Leave to Invoke Discovery" (Docket Entry 13), "Motion for Evidentiary Hearing and for Appointment of Counsel" (Docket Entry 14), "Request for Order for Production of Documents" (Docket Entry 15), "Motion for Mandamus" (Docket Entry 16), "Petitioner's Request for Leave to Amend" (Docket Entry 22), "Petitioner's Request for Leave for Modification of the Record" (Docket Entry 28), "Petitioner's Motion for Court Order for the Release of Documents" (Docket Entry 29), "Petitioner's Motion for Leave to Amend and Proposed Amendment" (Docket Entry 35), and "Motion for Leave to File Supplemental Citations, Authorities and Supplemental Memorandum" (Docket Entry 36).

In previous orders, the undersigned denied Petitioner's "Motion for Mandamus" (see Docket Entry 17 (denying Docket Entry 16)),[3] denied as moot "Petitioner's Motion for Court Order for the Release of Documents" (see first Text Order dated Mar. 31, 2015 (denying Docket Entry 29)), and granted "Petitioner's Request for Leave for Modification of the Record" (see second Text Order dated Mar. 31, 2015 (granting Docket Entry 28)), the last of which permitted Petitioner to supplement the record in

_____

[3] Petitioner objected to the order denying his Motion for Mandamus (see Docket Entry 18 ("Notice of Appeal"); Text Order dated Dec. 4, 2013 (construing Docket Entry 18 as objections to the order denying mandamus and directing Petitioner to file a supplemental memorandum setting out the grounds on which he objected); Docket Entry 20 (Petitioner's "Supplemental Memorandum" regarding objections)), and then unsuccessfully appealed to the United States Court of Appeals for the Fourth Circuit the District Judge's subsequent order denying Petitioner's objections (see Docket Entries 23, 27, 30-33).

the instant case with a copy of the trial court transcript from a hearing on August 26, 2010, on Petitioner's motions to quash, for bond reduction and to suppress (see Docket Entry 28 at 4-61). Additionally, the undersigned denied in part, found moot in part, and granted in part Petitioner's "Motion for Leave to File Supplemental Citations, Authorities and Supplemental Memorandum" (Docket Entry 36), and struck as unauthorized Petitioner's "Supplemental Memorandum" (Docket Entry 37). (See third Text Order dated Mar. 31, 2015.)[4]

## Motion for Leave to Expand the Record

Petitioner seeks to expand the record under Rule 7 of the Rules Governing Section 2254 Cases by inclusion of the following materials: (1) reporting officer narrative ("Narrative") (see Docket Entry 11 at 41-42); (2) photocopy of a hand print lifted by Cabarrus County Sheriff's Detective Mitch Queen (see id. at 43-44); (3) notes from interview of Cabarrus County Sheriff's Deputy Eugene Roberts (see id. at 45); (4) notes from interview of victim Michelle Furr (see id. at 66); (5) investigative file report (see id. at 46-47); (6) felony case summary (see id. at 48); (7) transcript of officers' radio transmissions (see id. at 56-64); (8) certificate of request for and delivery of August 26, 2010, pre-trial hearings transcripts (see id. at 65); (9)

---

[4] The undersigned also struck as unauthorized Petitioner's first "Supplemental Memorandum" (Docket Entry 34) and third "Supplemental Memorandum" (Docket Entry 39) and denied Petitioner's request to consider those documents appearing in his letter motion (Docket Entry 38). (See Text Order dated Apr. 13, 2015.)

transcript of victim Michelle Furr's 911 call (see id. at 49-55); (10) victim Darren Furr's statement to Detective Queen (see id. at 67-73); and (11) attorney/client correspondence from April 1, 2011, through July 21, 2012 (see, e.g., Docket Entry 2-3 at 9-10). (Docket Entry 12 at 1-2.) For the reasons that follow, the undersigned will deny Petitioner's Motion for Leave to Expand the Record.

Rule 7 of the Rules Governing Section 2254 Cases provides that, "[i]f the petition is not dismissed, the judge may direct the parties to expand the record by submitting additional materials relating to the petition." When a petitioner seeks to introduce evidence pursuant to Rule 7, he must meet the same conditions prescribed by § 2254(e)(2) for obtaining an evidentiary hearing. See Holland v. Jackson, 542 U.S. 649, 652-53 (2004) (per curiam) (recognizing that § 2254(e)(2)'s "restrictions apply *a fortiori* when a prisoner seeks relief based on new evidence without an evidentiary hearing"); see also Bradshaw v. Richey, 546 U.S. 74, 79 (2005) (holding federal appellate court erred by relying on evidence not properly presented to state courts without first determining whether habeas petitioner had met § 2254(e)(2) criteria).

"Under the opening clause of § 2254(e)(2), a failure to develop the factual basis of a claim is not established unless there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." Williams v. Taylor, 529 U.S. 420, 429-32 (2000); see also Wolfe v. Johnson, 565 F.3d

140, 167 (4th Cir. 2009) (applying <u>Williams</u> standard to review denial of evidentiary hearing). "Diligence for purposes of the opening clause depends upon whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court; it does not depend . . . upon whether those efforts could have been successful." <u>Williams</u>, 529 U.S. at 435.

If a habeas petitioner has failed to develop the factual basis of his claim in the state court proceedings, he must show <u>either</u> that his claim relies upon "a new rule of constitutional law, made retroactive to cases on collateral review," <u>or</u> "a factual predicate that could not have been previously discovered through the exercise of due diligence," § 2254(e)(2)(A), <u>and</u> that the evidence clearly and convincingly establishes "that but for constitutional error, no reasonable fact-finder would have found [him] guilty," 28 U.S.C. § 2254(e)(2)(B).

As an initial matter, with respect to the Narrative, investigative file report, and the transcript of the 911 call, those matters already constitute part of the record before the state court. (<u>See</u> Docket Entry 9-9 at 81-82, 88 (911 call); 120-23 (investigative file report); Docket Entry 9-10 at 61-64 (Narrative).) Thus, no need exists to "expand" the record to include such materials, and the undersigned will deny as moot Petitioner's request to add those items to the record.

As to the remaining items at issue, the record establishes that Petitioner failed to develop the state court record.

-6-

Petitioner either already possessed, or had access through his stand-by trial and/or appellate counsel to, such items prior to the date on which he filed his MAR in the state trial court (December 21, 2012 (see Docket Entry 9-14 at 2 (reflecting date MAR filed)). (See Docket Entry 2-2 at 14 (February 2, 2010 letter from prosecutor to Petitioner regarding disclosure of radio transmissions and 911 call), 17 and 20 (September 30, 2009 and September 22, 2010 letters from prosecutor to Petitioner regarding disclosure of felony case summary), 19 (February 3, 2010 letter from prosecutor to Petitioner regarding disclosure of notes from interview of Deputy Roberts); Docket Entry 11 at 65 (court reporter's certification regarding August 26, 2010 hearing transcript provided to stand-by counsel on March 1, 2011); Docket Entry 9-14 at 23 (Petitioner's MAR argument demonstrating his awareness of his correspondence with appellate counsel), 26 (Petitioner's MAR argument specifically referencing notes from interview of Michelle Furr), 28 (Petitioner's MAR argument expressly referencing Darren Furr's statement), 31 (Petitioner's MAR argument referencing photograph of hand print he received in discovery). Notwithstanding his possession of (or access to) those items, Petitioner failed to submit them to the MAR court or otherwise ensure that such materials became a part of the state court record. (See Docket Entries 9-2, 9-12, 9-14.) Petitioner's omission of those items from the state court record constitutes a failure to develop the factual basis of his underlying claims in the state court proceedings, 28 U.S.C.

§ 2254(e)(2). See Swann v. Taylor, No. 98-20, 1999 WL 92435, at *8 (4th Cir. Feb. 18, 1999) (unpublished) (finding that the petitioner "failed to develop the factual basis of his . . . claim within the meaning of § 2254(e)(2), because he did not present the [new evidence] at any point during the proceedings in the state courts" and further finding "no basis upon which to conclude that the state courts . . . denied [the petitioner] the opportunity to offer the [evidence] or otherwise develop the factual basis of his claim" (internal quotation marks omitted)); Waters v. Clark, No. 2:11cv630, 2012 WL 4498914, at *15 (E.D. Va. Sept. 28, 2012) (unpublished) (holding that the petitioner "failed to diligently develop the record in the state court proceedings because he apparently had in his possession several pieces of evidence in support of his habeas claims that he did not present to the state court — namely, the majority of the exhibits attached to [the petitioner's] improperly filed supplemental brief").

Accordingly, Petitioner may expand the record with his requested materials only if he can make the showing required by 28 U.S.C. § 2254(e)(2)(A) and (B). Here, Petitioner has neither argued that his claims depend on a new, retroactive rule of constitutional law, nor asserted that he could not have discovered the factual predicate of such claims with due diligence. (See Docket Entry 12.) Indeed, a review of Grounds One through Nine in the instant Petition reveals that none of those grounds rely upon a new, retroactive constitutional rule,

-8-

and that Petitioner possessed awareness of the factual predicates of those grounds, at the latest, as of the completion of his trial (Grounds Two through Nine), or as of the conclusion of his direct appeal (Ground One).

Accordingly, the undersigned will deny Petitioner's Motion for Leave to Expand the Record.

## Motions to Amend the Petition

On March 31, 2015, the undersigned allowed Petitioner 30 days to file a supplemental memorandum addressing the timeliness of the proposed amendments to the Petition in his "Request for Leave to Amend" (Docket Entry 22) and "Motion for Leave to Amend and Proposed Amendment" (Docket Entry 35). (See third Text Order dated Mar. 31, 2015.)[5]   In Petitioner's Supplemental Memorandum

---

[5] In the first of those filings, Petitioner sought to amend the instant Petition by adding new Grounds Ten and Eleven. (Docket Entry 22 at 4-6, 8.) Via Ground Ten, Petitioner alleges that the trial court violated his Sixth Amendment rights to a fair trial and due process by denying or dismissing his pre-trial and trial motions to suppress/exclude evidence, dismiss charges, for a continuance, and to compel discovery. (Id. at 4-6.) In Ground Eleven, Petitioner contends that the North Carolina Court of Appeals violated his rights under the Fifth, Sixth, and Fourteenth Amendments by dismissing, denying, or ignoring Petitioner's pro se motions and correspondence. (Id. at 8.) Petitioner's other above-cited filing proposes to amend existing Grounds Three and Four of the Petition. (See Docket Entry 35 at 2 (seeking to amend Ground Three with a claim that trial court violated the Confrontation Clause by denying Petitioner's right to effectively cross-examine victim Darren Furr and by admitting testimony regarding a latex glove without admitting the glove itself, and to amend Ground Four with a claim that the state violated Petitioner's Fifth and Sixth Amendment rights to due process and a fair trial by failing to allow Petitioner to view, inspect, or test the latex glove prior to presenting testimony about the glove).) However, Petitioner makes no argument that those proposed amendments to Grounds Three and Four should "relate back" to the filing date of the initial Petition because they arise out of the same transaction or occurrence. (See id.; see also Fed. R. Civ. P. 15(c)(1)(B) (providing that relation-back doctrine only saves "a claim or defense that arose out of the conduct, transaction, or occurrence set out — or attempted to be set out — in the original pleading".) Moreover, after a review of Grounds Three and Four and the corresponding proposed amendments to those grounds (compare Docket Entry 2 at 8, 10, with Docket Entry 35 at 2), the undersigned finds no such connection. Mayle v. Felix, 545 U.S. 644, 664 (2005)

-9-

Addressing Timeliness of Proposed Amendments to § 2254 Petition (Docket Entry 44), he tacitly conceded the untimeliness of his proposed amendments, and focused his arguments instead on various grounds on which the Court should consider his amendments despite their untimeliness. In other words, Petitioner impliedly requested equitable tolling, which doctrine the Supreme Court has ruled applicable in this context. See Holland v. Florida, 560 U.S. 631, 634 (2010). Equitable tolling may apply when a petitioner "shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Id. (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)).

Here, Petitioner argues his ignorance of the law as a "layman," his lack of access to a law library or assistance from North Carolina Prisoner Legal Services ("NCPLS"), his indigence, and his "diagnosed mental illness complications and/or illness" ought to toll the one-year statute of limitations. (See Docket Entry 44 at 2-3.) Petitioner's arguments lack merit.

Unfamiliarity with the legal process and lack of legal representation do not constitute grounds for equitable tolling.

---

(holding that, in the context of a habeas petition, "conduct, transaction, or occurrence" does not mean a petitioner's entire trial or sentencing); Ingram v. Buckingham Corr. Ctr., No. 3:09CV831, 2011 WL 836826, at *7 (E.D. Va. Mar. 4, 2011) (unpublished) ("[I]t is not sufficient that the new claim simply has the same form as the original claims . . . . Thus, 'a petitioner does not satisfy the Rule 15 'relation back' standard merely by raising some type of ineffective assistance in the original petition, and then amending the petition to assert another ineffective assistance claim based upon an entirely distinct type of attorney misfeasance.'" (quoting United States v. Ciampi, 419 F.3d 20, 24 (1st Cir. 2005))).

United States v. Sosa, 364 F.3d 507, 512 (4th Cir. 2004). Further, under Bounds v. Smith, 430 U.S. 817, 828 (1977), overruled on other grounds by Lewis v. Casey, 518 U.S. 343, 354 (1996), the state has an obligation to provide either prison law libraries or assistance from persons trained in the law. Because inmates in this State have access to NCPLS, the state has no legal obligation to provide law libraries for its inmates. See Burgess v. Herron, No. 1:11CV420, 2011 WL 5289769, at *2 (M.D.N.C. Nov. 2, 2011) (unpublished). In that regard, Petitioner's conclusory assertion that NCPLS did not aid him by "providing legal information" or "staff attorneys for the filing of § 2254 habeas corpus petitions" (see Docket Entry 44 at 2) does not suffice to demonstrate an "extraordinary circumstance" preventing timely filing, Holland, 430 U.S. at 634. Petitioner does not even assert that he ever contacted NCPLS for assistance with the instant Petition, much less that NCPLS ignored or declined his request for assistance (see Docket Entry 44), but such claims generally will not support an equitable tolling claim in any event. Hood v. Jackson, No. 5:10-HC2008-FL, 2010 WL 4974550, at *2 (E.D.N.C. Dec. 1, 2010) (unpublished) (citing cases); Dockery v. Beck, No. 1:02CV00070, 2002 WL 32813704, at *2 (M.D.N.C. August 1, 2002) (Beaty, J., adopting recommendation of Eliason, M.J.) (unpublished).[6]

---

[6] Of course, a failure to at least attempt to utilize this resource would constitute a lack diligence on Petitioner's part.

Finally, courts have held that mental incompetency can warrant equitable tolling; however, a petitioner's mental illness must not have merely lessened his ability to file or made filing difficult, but must have actually prevented him from understanding his legal rights and acting on them. Rhodes v. Senkowski, 82 F. Supp. 2d 160, 168-69 (S.D.N.Y. 2000) (collecting cases). "As a general matter, the federal courts will apply equitable tolling because of a petitioner's mental condition only in cases of profound mental incapacity," such as where a petitioner is institutionalized or adjudged mentally incompetent. Sosa, 364 F.3d at 513. Simply having a mental illness and taking medications does not suffice. Id. Nor will conclusory allegations meet a petitioner's burden. Rhodes, 82 F. Supp. 2d at 172. Here, Petitioner has neither alleged any specific mental condition nor made any showing that any such condition actually prevented him from understanding his legal rights and acting on them. Petitioner's failure to make that showing carries heightened significance where, as here, he managed to file the instant Petition containing nine grounds for relief and multiple other motions and filings despite any mental limitations.

In sum, the undersigned will deny "Petitioner's Request for Leave to Amend" (Docket Entry 22) and "Petitioner's Motion for Leave to Amend and Proposed Amendment" (Docket Entry 35), as the untimeliness of the amendments contained therein render them futile. See Woodruff v. Warden of Perry Corr. Inst., Civ. Action No. 9:07-2739-PMD-GCK, 2008 WL 4200291, at *5 (D.S.C. Sept. 8,

2008) (unpublished) ("[The][p]etitioner's proposed new claim

. . . is clearly devoid of legal merit, and allowing him leave to

amend his § 2254 petition to add such a claim would be futile.

Therefore, [his] Motion to Amend is denied.").

## Facts

The facts of the case, as set out in the North Carolina

Court of Appeals's opinion on Petitioner's direct appeal, are as

follows:

> [I]n the early morning hours of 20 August 2009, Darren
> and Michelle Furr awoke to the sound of ringing chimes,
> which indicated that the door to their detached garage
> was opened.  Mrs. Furr called 911 and went to a window
> which faced the driveway in the front of her house.  As
> she arrived at the window, she heard a rattling sound
> that appeared to come from the door leading to another
> garage which was attached to their house.  Through the
> window, Mrs. Furr saw a man, later identified as
> [Petitioner], reaching into the passenger side of her
> Chevrolet Suburban. [Petitioner] ran when Mrs. Furr
> attempted to open the window, and Mr. Furr and his son
> chased after him.  Mr. Furr lost sight of [Petitioner],
> but responding officers located [Petitioner] in a tree
> in the front yard of a nearby house and took him into
> custody.

France, 2012 WL 3573920, at *1.

## Grounds for Relief

Petitioner raises nine grounds for relief in his Petition.

He alleges that (1) Petitioner's appellate counsel provided

constitutionally ineffective assistance by failing "to raise any

and all grounds upon first appeal," by failing to obtain a pre-

trial motion hearing transcript, and by "waiv[ing] Petitioner's

statutory rights to withdraw his appeal against Petitioner's

instructions" (Docket Entry 2 at 5; see also Docket Entry 11 at

2-10); (2) the "arresting and complaining officers both knowingly
and/or in deliberate disregard for the truth supplied the issuing
magistrate false information and/or falsified evidence in the
complaint in order to establish probable cause for issuance of
warrants for Petitioner's arrest" in violation of the Fourth
Amendment (Docket Entry 2 at 6; see also Docket Entry 11 at 12-
15); (3) the trial court violated the Confrontation Clause of the
Sixth Amendment by proceeding to trial in the absence of an
arresting officer and by admitting hearsay testimony from seven
state witnesses regarding the arresting officer's statements
(Docket Entry 2 at 8; see also Docket Entry 11 at 16-17); (4) the
state violated Petitioner's rights under the Fifth and Sixth
Amendments by failing to provide Petitioner with fingerprint
evidence and complete radio transmissions, photographs, and video
footage from the arresting officer's vehicle, by "provid[ing]
false and/or fabricated material statements of fact and/or
evidence," and by "fail[ing] to disclose the use of expert
testimony" (Docket Entry 2 at 10; see also Docket Entry 11 at 19-
22); (5) the state violated Petitioner's Fifth and Sixth
Amendment rights by "prosecuting him without probable cause to
believe he committed the offenses charged" (Docket Entry 2 at 12;
see also Docket Entry 11 at 23-24); (6) the state violated
Petitioner's Fifth Amendment due process rights by use of
"impermissibly suggestive identification procedures" (Docket
Entry 2 at 14; see also Docket Entry 11 at 25-27); (7) the state
violated Petitioner's Fifth and Sixth Amendment rights to a fair

-14-

trial and due process by presenting the "perjured testimony" of an officer to the grand jury (Docket Entry 2 at 16; see also Docket Entry 11 at 28-31); (8) the state violated Petitioner's Sixth Amendment right to a speedy trial (Docket Entry 2 at 18; see also Docket Entry 11 at 32-34); and (9) "the cumulative affect [sic] of perjured, prejudicial, hearsay, irrelevant or otherwise inadmissible testimony or evidence" admitted by the trial court violated Petitioner's Fifth and Sixth Amendment rights to due process and a fair trial (Docket Entry 2 at 20; see also Docket Entry 11 at 35-37).

## Habeas Standards

The Court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Further, "[b]efore [the] [C]ourt may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court.  In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to [this] [C]ourt in a habeas petition.  The exhaustion doctrine . . . is now codified at 28 U.S.C. § 2254(b)(1)."  O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); see also 28 U.S.C. § 2254(b)(3) ("A State shall not be deemed to have waived the exhaustion requirement . . . unless the State, through counsel, expressly waives the requirement.").

-15-

When a petitioner has exhausted state remedies, this Court must apply a highly deferential standard of review in connection with habeas claims "adjudicated on the merits in State court proceedings," 28 U.S.C. § 2254(d). More specifically, the Court may not grant relief unless a state court decision on the merits "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Id. To qualify as "contrary to" United States Supreme Court precedent, a state court decision either must arrive at "a conclusion opposite to that reached by [the United States Supreme] Court [or] . . . confront[] facts that are materially indistinguishable from a relevant [United States] Supreme Court precedent and arrive[] at a result opposite to that reached by [the United States Supreme Court]." Williams v. Taylor, 529 U.S. 362, 405 (2000). A state court decision "involves an unreasonable application" of United States Supreme Court case law "if the state court identifies the correct governing legal rule from [the United States Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407; see also id. at 409-11 (explaining that "unreasonable" does not mean merely "incorrect" or "erroneous").

## Discussion

I.  Ground One

Petitioner first maintains that his appellate counsel provided constitutionally deficient performance. (Docket Entry 2 at 5; see also Docket Entry 11 at 2-10.) In particular, Petitioner alleges that his appellate counsel refused to "raise any and all grounds on first appeal against Petitioner's specific instructions." (Docket Entry 2 at 5; see also Docket Entry 11 at 2-5, 8-10.) Although Petitioner did not specify which grounds his appellate counsel should have raised in the "Supporting Facts" section of Ground One (see Docket Entry 2, ¶ 12 (Ground One) (a)), for each of Petitioner's subsequent grounds, he indicated that he did not raise those issues on direct appeal because his appellate counsel refused to investigate or raise the issues after being instructed to do so by Petitioner (see id., ¶ 12 (Ground Two) (c)(2), (Ground Three) (c)(2), (Ground Four) (c)(2), (Ground Five) (c)(2), (Ground Six) (c)(2), (Ground Seven) (c)(2), (Ground Eight) (c)(2), (Ground Nine) (c)(2)). Thus, the Court should construe his Petition to assert Grounds Two through Nine as issues that appellate counsel should have raised on direct appeal.[7] According to Petitioner, his appellate counsel's

---

[7] In Petitioner's response in opposition to the instant summary judgment motion, he describes additional arguments he contends his appellate counsel should have raised on direct appeal. (Compare Docket Entry 2 at 5, 6, 8, 10, 12, 14, 16, 18, 20, with Docket Entry 11 at 9.) However, a summary judgment response "is not the proper place to raise new facts. Under Rule 2(c) of the Rules Governing Section 2254 Cases, a petitioner must set forth in his petition 'the facts supporting each ground' for relief." Velasquez v. Gipson, No. SA CV 12-1078(JSL), 2013 WL 3381371, at *9 n.4 (C.D. Cal. July 8, 2013) (unpublished) (emphasis added); see also Quackenbush v. Tilton, No.

"failure to raise a single issue in challenge to [his] convictions for attempted first degree burglary, breaking and entering, and breaking and entering a motor vehicle, essentially constituted counsel conceding Petitioner's guilt in these matters, against Petitioner's instructions . . . ." (Docket Entry 11 at 3.) Additionally, Petitioner argues that his appellate counsel failed to obtain a transcript of the August 26, 2010, hearing before the trial court on Petitioner's motions to quash, for bond reduction, and to suppress, and "waived Petitioner's statutory rights to withdraw his appeal against Petitioner's instructions." (Docket Entry 2 at 5; see also Docket Entry 11 at 2, 8, 9, 10.) Petitioner's arguments lack merit.

Petitioner presented the substance of this ground to the state trial court in his MAR. (See Docket Entry 9-14 at 4, 13, 23-24.) That court denied the claim on the merits as follows:

> The court has reviewed the excellent appellate brief filed by [Petitioner's appellate counsel], and the court finds that she correctly briefed and argued the only appropriate assignments of error. As a result of her efforts, [Petitioner's] sentence was shortened by a minimum of 116 months and a maximum of 149 months. [Petitioner] in his motion contends incorrectly that [his appellate counsel] should have briefed and argued numerous other points – none of which were supported by the evidence. [Petitioner's] contention that he was afforded ineffective assistance of counsel on appeal by

---

07CV413W(WMC), 2008 WL 183710, at *6 (S.D. Cal. Jan. 18, 2008) (unpublished) ("Facts must be stated, *in the petition*, with sufficient detail to enable the Court to determine, from the face of the petition, whether further habeas corpus review is warranted. Moreover, the allegations should be sufficiently specific to permit the respondent to assert appropriate objections and defenses." (internal citations omitted) (emphasis in original)).

> [his appellate counsel's] refusing to raise certain issues is without merit. [Petitioner's appellate counsel] briefed and argued the points that she should have, and correctly refused to brief what she should not have. The court finds that he received outstanding assistance of counsel in the Court of Appeals.

(Docket Entry 9-11 at 3.)

Under these circumstances, this Court must apply Section 2254(d)'s highly deferential standard of review. In that regard, the trial court's order denying Petitioner's parallel ineffective assistance of appellate counsel claim neither resulted in a decision contrary to, nor involved an unreasonable application of, clearly established federal law.[8] In order to prove ineffective assistance of appellate counsel, Petitioner must satisfy the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984). See Smith v. Murray, 477 U.S. 527, 535-36 (1986) (applying Strickland standard to claim of appellate ineffective assistance); Bell v. Jarvis, 236 F.3d 149, 164 (4th Cir. 2000) (en banc) (same). More specifically, Petitioner must show that (1) his appellate counsel's performance fell below an objective standard of reasonableness; and (2) the deficient performance prejudiced Petitioner, i.e., a reasonable probability that, but for his appellate counsel's unprofessional errors, the result of the proceeding would have changed. See Strickland, 466 U.S. at 678-88, 694. Further, "counsel is strongly presumed to have rendered adequate assistance and made all significant

---

[8] Petitioner has not alleged (and the Court has not identified) any unreasonable fact-finding by the trial court in denying Petitioner's ineffective assistance of appellate counsel claim.

decisions in the exercise of reasonable professional judgment." Id. at 690. Courts likewise presume that appellate counsel "decided which issues were most likely to afford relief on appeal." Pruett v. Thompson, 996 F.2d 1560, 1568 (4th Cir. 1993).

The state trial court neither contradicted nor unreasonably applied Strickland in denying Petitioner's ineffective assistance of appellate counsel claim. As discussed in more detail below, Petitioner's claim that his appellate counsel provided ineffective assistance by not presenting Grounds Two through Nine on appeal fails, because those grounds themselves lack merit. See Carter v. Lee, No. 99-10, 202 F.3d 257 (table), 1999 WL 1267353, at *11 (4th Cir. Dec. 29, 1999) (unpublished) ("Appellate counsel [is] not ineffective for failing to raise [an issue] on appeal [that] is plainly without merit."); Walker v. Hall, No. 1:11CV128, 2014 WL 7272812, at *9 n.11 (M.D.N.C. Dec. 18, 2014) (unpublished) ("Petitioner's related ineffective assistance of appellate counsel claim also lacks merit, given the . . . patent deficiency of his underlying allegations . . . ."), appeal dismissed, 2015 WL 1798925 (4th Cir. Apr. 21, 2015) (unpublished); Ellison v. United States, Nos. 3:07CR30RJC, 3:10CV207RJC, 2013 WL 2480654, at *3 (W.D.N.C. June 10, 2013) (unpublished) ("[A]ny arguments made by counsel along the lines suggested by Petitioner would have been futile. Therefore, Petitioner has failed to establish a prima facie claim of ineffective assistance of counsel."); Walker v. United States,

Civ. No. WDQ-10-2739, Crim. No. WDQ-07-0146, 2011 WL 4103032, at *3 (D. Md. Sept. 9, 2011) (unpublished) (ruling that where an argument "would have been futile [a defendant's] appellate counsel was not ineffective for failing to raise it").

Petitioner contends in his second ground for relief that "the arresting and complaining officers" committed "an unconstitutional seizure of his person" in violation of the Fourth Amendment by "knowingly and/or in deliberate disregard for the truth suppl[ying] the issuing magistrate with false information and/or falsified evidence in the complaint in order to establish probable cause for . . . Petitioner's arrest." (Docket Entry 2 at 6.)  More specifically, Petitioner points to three inconsistencies between the information in the Narrative, and the testimony of various state's witnesses at trial:

(1) the Narrative reflects that the victims observed the suspect entering one of their motor vehicles in the garage (see Docket Entry 11 at 41), whereas the testimony of victim Michelle Furr (see Docket Entry 9-9 at 68-70, 73-74, 91), victim Darren Furr (see id. at 97-98, 100, 120-22), Deputy Roberts (see Docket Entry 9-10 at 27), and Detective Mitch Queen (see id. at 34), indicates that the suspect entered the vehicle in question in the driveway (Docket Entry 11 at 12-14);

(2) the Narrative states that Darren Furr and his son "observed the suspect flee the scene on foot" (see Docket Entry 11 at 41), but, according to Petitioner, Darren Furr "testified that by the time he had exited the residence, he didn't know

-21-

where the suspect went; he 'guessed' the suspect ran east from the residence; he did not see the suspect anywhere in sight; thinks the suspect had to come around the back of the residences" (id. at 15-16 n.2; see also Docket Entry 9-9 at 98-99, 109-12)); and

(3) the Narrative indicates that Darren and Michelle Furr identified keys found on the suspect as keys stolen from them during a previous breaking and entering of their motor vehicle (Docket Entry 11 at 41), but those individuals testified that they did not identify any keys on the night in question (Docket Entry 11 at 13; see also Docket Entry 9-9 at 74-75, 90-91, 119-20).

As an initial matter, Petitioner's allegations do not establish that the Narrative contains perjured statements (much less that any officer gave any perjured testimony to a magistrate). Deputy Roberts prepared the Narrative based in part on information provided by the victims to Cabarrus County Sheriff's Deputy Kevin Klinglesmith during the immediate aftermath of the crimes and before the arrest of Petitioner. (See Docket Entry 11 at 41 (reflecting initial dispatch of deputies at 4:45 a.m. on August 20, 2009, first deputy in-person contact with victims at 4:49 a.m., and report time of Narrative at 6:23 a.m.).) As such, the inconsistencies alleged by Petitioner could simply constitute the result of a mistake or a faulty memory of the victims' accounts. (See Docket Entry 9-9 at 123 (trial court sustaining state's objection to Petitioner's use

of inconsistencies in Narrative to cross-examine victim Darren
Furr and noting that "the officers may have mistaken what [Darren
Furr] said" (emphasis added); Docket Entry 9-10 at 38-41
(testimony of Detective Sergeant Pfister that 911 operator
mistakenly transcribed in computer automated display ("CAD")
report that suspect entered victims' motor vehicle in garage
rather than driveway)); see also United States v. Mount, 896 F.2d
612, 624 (1st Cir. 1990) (holding that the petitioner did not
establish inaccurate testimony of agent amounted to perjury,
where the petitioner failed to show that agent "did not believe
what he said to be true"); United States v. Williamson, No.
1:06CR474, 2012 WL 1657929, at *3 (M.D.N.C. May 11, 2012)
(unpublished) (recognizing that "an inconsistency can result from
innocent mistake or failed recollection rather than falsity").

Even if Petitioner could establish that the alleged
inconsistencies between the Narrative and trial testimony
demonstrated perjured statements in the Narrative (and to a
magistrate), he cannot demonstrate prejudice arising from any
such perjury. The jury's guilty verdicts on all of the charged
offenses render harmless any allegedly perjured statements made
by officers to establish probable cause for Petitioner's arrest
warrant. See United States v. Mechanik, 475 U.S. 66, 70 (1986)
(declining to grant habeas relief arising from grand jury defect
because "the petit jury's subsequent guilty verdict means not
only that there was probable cause to believe that the defendants
were guilty as charged, but also that they are in fact guilty as

-23-

charged beyond a reasonable doubt"); <u>United States v. Masiarczyk</u>, 1 F. App'x 199, 213-14 (4th Cir. 2001) (concluding that, "even if [the agent's] grand jury testimony was inaccurate or false, that falsity provides no basis for reversing [the defendants'] convictions" and holding that "because the petit jury subsequently convicted [the defendants] beyond a reasonable doubt, any error in their grand jury proceedings is harmless"); <u>United States v. Colon-Munoz</u>, 192 F.3d 210, 218-19 (1st Cir. 1999) (relying upon <u>Mechanik</u> and stating that "any error in the charging decision of the grand jury was rendered harmless by the verdict"); <u>Mount</u>, 896 F.3d at 624 (holding that "[w]itness perjury in establishing probable cause becomes harmless after the rendition of a guilty verdict unless prosecutorial misconduct is so 'serious and blatant' as to 'distort[] the integrity of the judicial process'" (quoting <u>United States v. Bucci</u>, 839 F.2d 825, 831 (1st Cir. 1988), in turn, quoting <u>United States v. Ogden</u>, 703 F.2d 629, 636 (1st Cir. 1983)). In fact, on cross-examination, Petitioner questioned Cabarrus County Detective Sergeant Kevin Pfister about some of the alleged inconsistencies in the Narrative (<u>see</u> Docket Entry 9-10 at 212-15), and the jury nevertheless found sufficient evidence to find Petitioner guilty beyond a reasonable doubt on all charges. See <u>Masiarczyk</u>, 1 F. App'x at 213 (rejecting claim that agent's false grand jury testimony prejudiced the defendants in part because "defense counsel thoroughly cross-examined [the agent] at trial on this issue").

Accordingly, the state trial court did not unreasonably apply or contradict clearly established federal law in ruling that Petitioner's ineffective assistance of appellate counsel claim premised on counsel's failure to present the substance of Ground Two on direct appeal lacked merit.

In Ground Three, Petitioner asserts that the trial court violated the Confrontation Clause of the Sixth Amendment by proceeding to trial in the absence of one of the arresting officers, Deputy Klinglesmith, and by permitting several state's witnesses to testify about Deputy Klinglesmith in his absence. (Docket Entry 2 at 8; see also Docket Entry 11 at 16-18 (citing Docket Entry 9-9 at 74, 101, 109, 113, 114; Docket Entry 9-10 at 17).) According to Petitioner, "Deputy Klinglesmith was an accusatory witness," giving Petitioner "the constitutional right to confront him." (Docket Entry 11 at 17.)

Petitioner's assertion that the trial court violated the Confrontation Clause fails as a matter of law. Although the Confrontation Clause of the Sixth Amendment guarantees a criminal defendant the right "to be confronted with the witnesses against him," U.S. Const. amend. VI, "[t]he main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination," Davis v. Alaska, 415 U.S. 308, 315-16 (1974) (internal quotation marks and citation omitted and emphasis added). Here, the record reflects that Deputy Klinglesmith's long-planned honeymoon in Mexico prevented him from attending Petitioner's trial. (See Docket Entry 9-10 at 17.) Further, the

-25-

state did not seek to introduce any prior testimony of Deputy Klinglesmith in his absence, such as grand jury testimony or the Narrative containing Deputy Klinglesmith's statements derived from his interview of the victims. (See Docket Entry 9-9 at 32-141; Docket Entry 9-10 at 14-68, 110-19.)[9] Moreover, the transcript pages cited by Petitioner as evidence of "[p]rosecutors . . . knowingly eliciting hearsay testimony" do not contain any hearsay statements by Deputy Klinglesmith. (See Docket Entry 11 at 18 (citing Docket Entry 9-9 at 74, 101, 109, 113, 114; Docket Entry 9-10 at 17).) Thus, Petitioner has shown neither that the state introduced prior testimony from Deputy Klinglesmith to which a right of confrontation would attach, nor that the state elicited any impermissible hearsay statements by Deputy Klinglesmith in his absence.

Accordingly, the MAR court reasonably applied and did not contradict Strickland in concluding that Petitioner's appellate counsel reasonably opted not to raise Ground Three on appeal.[10]

---

[9] In fact, Petitioner used Deputy Klinglesmith's imputed statements in the Narrative to cross-examine Detective Pfister. (Docket Entry 9-10 at 61-64.)

[10] In Petitioner's response in opposition to the instant summary judgment motion, he attempts to add an argument in support of Ground Three that the trial court violated his Confrontation Clause rights by denying him the opportunity to cross-examine Darren Furr regarding his prior inconsistent statements as reflected in the Narrative, investigative file report, felony case summary, and radio transmissions. (See Docket Entry 11 at 17 (citing Docket Entry 9-9 at 120-23).) However, a summary judgment response "is not the proper place to raise new facts. Under Rule 2(c) of the Rules Governing Section 2254 Cases, a petitioner must set forth in his petition 'the facts supporting each ground' for relief." Velasquez v. Gipson, No. SA CV 12-1078(JSL), 2013 WL 3381371, at *9 n.4 (C.D. Cal. July 8, 2013) (unpublished) (emphasis added); see also Quackenbush v. Tilton, No. 07CV413W(WMC), 2008 WL 183710, at *6 (S.D. Cal. Jan. 18, 2008) (unpublished) ("Facts must be stated, in the petition, with sufficient detail to enable the Court to determine, from the face of the petition, whether further habeas corpus review is warranted.

Petitioner alleges in Ground Four that the state violated his rights under the Fifth and Sixth Amendments by willfully failing to comply with disclosure requirements. (Docket Entry 2 at 10.) In particular, Petitioner claims that the prosecution and the trial court refused Petitioner's repeated requests for complete radio transmissions by the officers involved, photographs, videographic footage from Deputy Klinglesmith's vehicle, and fingerprint evidence, and failed to disclose the use of Detective Queen as a fingerprint expert at trial. (Id.; see also Docket Entry 11 at 19-22.) Petitioner additionally argues that the state provided to him "false and/or fabricated material statements of fact and/or evidence." (Docket Entry 2 at 10.) Those allegations lack merit.

Under Brady v. Maryland, 373 U.S. 83 (1963), "a State violates a defendant's due process rights when it fails to disclose to the defendant prior to trial 'evidence favorable to an accused where the evidence is material.'" Basden v. Lee, 290 F.3d 602, 608 (4th Cir. 2002) (quoting Brady, 373 U.S. at 87). "There are three fundamental components to a Brady claim: (1) '[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching'; (2) the 'evidence must have been suppressed by the State'; and (3) the evidence must be material to the defense, that is, 'prejudice

_____

Moreover, the allegations should be sufficiently specific to permit the respondent to assert appropriate objections and defenses." (internal citations omitted) (emphasis in original)).

must ensue.'" <u>Walker v. Kelly</u>, 589 F.3d 127, 137 (4th Cir. 2009)
(quoting <u>Strickler v. Greene</u>, 527 U.S. 263, 281-82 (1999))
(internal brackets and ellipses omitted); <u>see also</u> <u>Kyles v.</u>
<u>Whitley</u>, 514 U.S. 419, 434 (1995) ("[The] touchstone of
materiality [in the <u>Brady</u> context] is a reasonable probability of
a different result, and the adjective is important. The question
is not whether the defendant would more likely than not have
received a different verdict with the [suppressed] evidence, but
whether in its absence he received a fair trial, understood as a
trial resulting in a verdict worthy of confidence." (internal
quotation marks omitted)). "It is the petitioner's burden to
establish the three elements of a <u>Brady</u> violation[.]" <u>Fullwood</u>
<u>v. Lee</u>, 290 F.3d 663, 685 (4th Cir. 2003) (internal citation
omitted). Here, Petitioner has not met his burden as to the
"favorable" and "material" elements of his instant <u>Brady</u> claim.

With regard to the radio transmissions, the record reflects
that the trial court denied Petitioner's motion to continue the
trial based on the state's alleged failure to provide Petitioner
with complete radio transmissions because the state affirmed that
it had already provided Petitioner with all substantive
transmissions:

> Petitioner: State had the obligation to supply
> [Petitioner] with discovery materials.
> As of right now the radio transmissions
> are still missing, all of them aren't
> complete. The transmissions stopped at
> 5:37 [a.m.] on what they gave me, but
> they were still making them up until at
> least 10:43 [a.m.].

-28-

```
[Trial Court]:   What says the State?

[Prosecutor]:    Your Honor, the initial request went in
                 to get the radio traffic.  They pulled
                 all the radio traffic they had that
                 related to the incident.  From what I
                 understand, anything beyond that would
                 have been just confirming that the tow
                 truck was there and that the tow truck
                 had left.  But as far as substantive to
                 this case, we've given over everything
                 that was substantive.

[Trial Court]:   You're affirmatively stating to the
                 Court as an officer of the court you've
                 given everything to [Petitioner] that's
                 available; is that right?

[Prosecutor]:    Yes.  Yes, sir.
```

(Docket Entry 9-9 at 12.)

Notwithstanding the prosecutor's above-quoted assertion to the trial court, Petitioner asserts that "complete" transmissions would have "established" that Deputy Roberts never drove back to the victims' residence after Petitioner's arrest and, thus, that Darren Furr and Deputy Roberts "perjured" themselves by testifying that Deputy Roberts did drive Petitioner to the Furrs' residence post-arrest, and that Darren Furr then identified Petitioner as the perpetrator.  (Docket Entry 11 at 20.) Petitioner's speculative assertion fails to make out a Brady claim for two reasons.  First, the trial transcript does not reflect testimony from either Darren Furr or Deputy Roberts regarding a post-arrest identification of Petitioner by Darren Furr.  (See Docket Entry 9-9 at 94-125; Docket Entry 9-10 at 14-27.)  Therefore, even if the complete transmissions demonstrated that Deputy Roberts did not drive back to the victims' residence

-29-

post-arrest, such fact would not have any tendency to impeach the trial testimony of either Darren Furr or Deputy Roberts.

Second, Petitioner's bald assertion as to what further radio transmissions would "establish" constitutes sheer speculation, particularly in the context of the state's affirmation to the trial court that the undisclosed transmissions involved only discussions regarding the tow truck used to tow Petitioner's vehicle from the scene.  Unsupported, speculative assertions do not suffice to establish the "favorable" or "material" elements of Brady.  See Godlock v. Fatkin, 84 F. App'x 24, 29 (10th Cir. 2003) ("Although [the] petitioner offers various theories to support his position [on the favorable and material elements of his Brady claim], his conclusory allegations and speculation . . . fail to meet the Brady standard."); see also United States v. Aleman, 548 F.3d 1158, 1164 (8th Cir. 2008) ("[The defendant] only speculates that interviews of [the undisclosed] individuals would have provided evidence favorable to his defense, however, and mere speculation is not sufficient to sustain a Brady claim." (internal ellipses and quotation marks omitted)); Green v. Ballard, Civ. Action No. 3:02–1348, 2015 WL 1612198, at *37 (S.D.W. Va. Apr. 10, 2015) (unpublished) ("[T]o succeed on [his Brady] claim, [the p]etitioner must not only demonstrate that evidence was withheld, he must show that the evidence was exculpatory.  Mere speculation is insufficient to meet that burden."); United States v. Bujilici, Crim. Action No. 12-00231-01, 2014 WL 2112858, at *6 (W.D. La. May 19, 2014)

(unpublished) ("[The] [p]etitioner's bald assertion that he would not have been found guilty is insufficient to establish materiality under the third prong of <u>Brady</u>.").

Petitioner's claim that the state and/or trial court refused his repeated requests for "photos" (<u>see</u> Docket Entry 2 at 10) fails as conclusory and unsupported, where Petitioner has made no attempt to describe which photographs the state failed to provide. <u>See</u> <u>Nickerson v. Lee</u>, 971 F.2d 1125, 1136 (4th Cir. 1992) ("In order to obtain an evidentiary hearing on . . . any claim[], a habeas petitioner must come forward with some evidence that the claim might have merit. Unsupported, conclusory allegations do not entitle a habeas petitioner to an evidentiary hearing."), <u>abrog'n on other grounds recog'd</u>, <u>Yeatts v. Angelone</u>, 166 F.3d 255 (4th Cir. 1999).

Petitioner's contentions regarding Deputy Klinglesmith's dashboard camera footage fare no better. The trial court denied Petitioner's pre-trial motion regarding the footage based on the prosecutor's affirmation that the state had turned over all available and applicable materials:

| | |
|---|---|
| [Trial Court]: | In-dash camera in the motor vehicle? |
| [Prosecutor]: | Yes. None of the patrol units that responded had it. Is that correct, Deputy Roberts? |
| Deputy Roberts: | Deputy Klinglesmith's did, but -- |
| [Prosecutor]: | Do we know if we have -- did we ever pull that or do we have it or -- |

-31-

```
Deputy [Roberts]:    I don't think so.

[Prosecutor]:        No, we've turned over everything we
                     have.

[Trial Court]:       Again,  you're  stating  that  --
                     you're telling me that you have
                     turned over, the State has turned
                     over  absolutely  every  bit  of
                     evidence that possibly could apply
                     to this case; is that right?

[Prosecutor]:        Everything that we are aware of,
                     yes.

[Trial Court]:       All right.  You can ask an officer
                     on the stand about it, if you want
                     to later on.

[Petitioner]:        It's Officer Klinglesmith's footage
                     that I wanted, that I needed for my
                     case.

[Trial Court]:       Well,  I  don't  know  -- they're
                     saying there is no such footage,
                     sir.  I can't manufacture it, nor
                     can they, if it doesn't exist.
```

(Docket Entry 9-9 at 13-14.)

Here, Petitioner assumes from the fact that Deputy
Klinglesmith's vehicle contained a dashboard camera that (1) the
camera actually operated during Deputy Klinglesmith's
investigation of the underlying crimes; (2) that the camera
produced usable footage; (3) the footage remained intact (i.e.,
not destroyed, recorded over, erased, etc.).  Petitioner cannot
base a Brady claim on evidence which he feels should exist as
opposed to evidence that actually does exist.  See Green, 2015 WL
1612198, at *37 ("Petitioner's claim relies on documents that he
*believes* should have been created, but not on documents that he
can show *actually were created*.  The failure of State workers to

record interviews or complete their written records in the manner that Petitioner interprets the statute to require does not give rise to a claim under <u>Brady</u>." (emphasis in original)).

Moreover, Petitioner conclusorily states that the footage "would have established that investigators, primarily . . . Deputy Klinglesmith w[ere] aware that the information being supplied to the magistrate in support of probable cause for Petitioner's arrest was false and/or misleading." (Docket Entry 11 at 20.) Petitioner makes no attempt to explain how the footage would establish such awareness on the part of the officers involved (<u>see</u> <u>id.</u>), especially given the testimony of other officers that Deputy Klinglesmith spent most of his time away from his patrol vehicle interviewing the victims and apprehending Petitioner (<u>see, e.g.</u>, Docket Entry 9-9 at 49, 131-34, 139, 140-41; Docket Entry 9-10 at 18, 24-25). Again, such unsupported allegations do not entitle Petitioner to relief under <u>Brady</u>. <u>See</u> <u>Godlock</u>, 84 F. App'x at 29; <u>Aleman</u>, 548 F.3d at 1164; <u>Green</u>, 2015 WL 1612198, at *37.

Petitioner next claims that the state failed to disclose that Detective Queen would testify as an expert in fingerprint analysis. (Docket Entry 2 at 10; <u>see also</u> Docket Entry 11 at 19.) That claim fails for the simple reason that the State did not tender Detective Queen as an expert witness. (<u>See</u> Docket Entry 9-10 at 27-35.) Furthermore, even assuming <u>arguendo</u> that Detective Queen's testimony amounted to expert opinion and that the state's failure to disclose him as an expert violated the

-33-

United States Constitution, Petitioner cannot show any resulting prejudice because Detective Queen did not identify any usable fingerprints. (Id. at 32, 34.)

In support of his claim that the state provided false evidence in discovery, Petitioner rehashes his assertion from Ground Two that the Narrative (and other investigative documents) falsely state that the victims (1) observed the suspect entering their vehicle in their garage as opposed to their driveway; and (2) identified the set of keys found on Petitioner as being their stolen property. (Docket Entry 11 at 22.) As discussed in the context of Ground Two, Petitioner has merely shown inconsistencies between information contained in those investigative documents and various witnesses' testimony at trial. Such inconsistencies constitute a matter of credibility for the jury to decide and do not rise to the level of constitutionally impermissible perjury. See Washington v. Hall, No. 1:11CV764, 2013 WL 1788593, at *2 (M.D.N.C. Apr. 26, 2013) (unpublished) ("Here, [the petitioner] has done no more than point to inconsistent testimony. There is no evidence that the testimony of any of the three witnesses was perjured, much less that the prosecution knew it was perjured. The inconsistent testimony was fully presented to the jury, and it was the jury's job to decide what the credible evidence was.").

Petitioner additionally asserts that investigative documents provided to him in discovery falsely state that "officers making visual observations into Petitioner's vehicle reported seeing

-34-

other items believed to be burglary tools." (Docket Entry 11 at 22.) However, the record does not establish the falsity of that statement. Cabarrus County Sheriff's Deputy J.R. Smith testified that he located Petitioner's vehicle near the scene of the crimes and saw a GPS unit, a latex glove, and a screwdriver inside. (Docket Entry 9-9 at 53-54.) The latex glove and the screwdriver formed the basis of Petitioner's conviction of possession of housebreaking implements. (Docket Entry 9-2 at 10, 26.) Thus, Petitioner has not shown false Deputy Smith's reported belief that he observed burglary tools inside Petitioner's vehicle.

In sum, the MAR court did not contradict or unreasonably apply Strickland by denying Petitioner's ineffective assistance of appellate counsel claim based upon counsel's failure to raise the substance of Ground Four on appeal.

In Ground Five, Petitioner merely repackages a portion of Ground Four (the state provided false discovery) and the entirety of Grounds Six through Nine. (Docket Entry 2 at 12; see also Docket Entry 11 at 23-24.) Accordingly, no need exists to independently assess the merits of Ground Five.

Petitioner maintains in Ground Six that the state violated his Fifth Amendment due process rights by "impermissibly suggestive identification procedures." (Docket Entry 2 at 14; see also Docket Entry 11 at 25-27.) More specifically, Petitioner alleges that "two impermissibly suggestive identification procedures took place; one at the August 26, 2010 Motion to Suppress hearing at which [Darren] Furr testified to

-35-

seeing . . . Petitioner, and again at the Furr residence shortly after Petitioner's arrest where [Darren] Furr testified to Sheriff's deputies having brought . . . Petitioner to the residence handcuffed and detained in the back of the patrol vehicle, thus constituting an 'in-court show up'" in violation of <u>United States v. Emanuele</u>, 51 F.3d 1123, 1131 (3d Cir. 1995), <u>United States v. Brownlee</u>, 454 F.3d 131, 138 (3d Cir. 2006), and <u>Neil v. Biggers</u>, 409 U.S. 188 (1972). (Docket Entry 11 at 25-26.)

Ground Six fails for the simple reason that neither victim even testified, much less "identified" Petitioner, at the motion hearing on August 26, 2010 (<u>see</u> Docket Entry 28 at 4-61), and neither victim identified Petitioner during their testimony at Petitioner's trial (<u>see</u> Docket Entry 9-9 at 70-133). Petitioner acknowledges that the victims "did not specifically point []Petitioner out as the perpetrator" during their in-court testimony, but argues that the victims' testimonial <u>descriptions</u> of the perpetrator, (<u>see</u> Docket Entry 9-9 at 79 (testimony of Michelle Furr: "He was a –- he was black. He was a big guy; I could see his hands, nice big hands. No hair."); 108 (testimony of Darren Furr: "[H]e was –- he's brown, he's about 5'11, six foot tall, weighs about 250, 260, maybe 300 pounds. . . . I know he's a big guy. And I said he had baggy clothes on."); 116 (testimony of Darren Furr: "He was about 5, anywhere from 5'10" to 6 foot tall, between 250 to 300 pounds, bald headed and he had baggy clothes on. He was heavy set.")), "w[ere] a perfect match

-36-

to [] Petitioner" and "would have left no room for doubt in the minds of the jurors" (Docket Entry 11 at 25).

However, witness testimony providing a <u>description</u> of the suspect based on the witness' first-hand knowledge from the scene of the crimes neither amounts to a positive <u>identification</u> of the defendant as the perpetrator nor testimony that the defendant <u>resembles</u> the suspect, the latter two of which implicate due process concerns. <u>See</u> <u>Patler v. Slayton</u>, 503 F.2d 472, 476-77 (4th Cir. 1975) (noting distinction between "eliciting only what [witnesses] saw at the scene" and unconstitutional identification and resemblance testimony); <u>see also</u> <u>United States v. Greene</u>, 704 F.3d 298, 311 (4th Cir. 2013) ("The law is plain: A prosecutor cannot point to the defendant, or direct the witness' attention to the defendant, and then elicit <u>identification</u> or <u>resemblance</u> testimony." (emphasis added)). Moreover, to the extent the victims' descriptions of the suspect during their trial testimony differed from any description previously provided to the investigating deputies, such inconsistencies constitute a matter of credibility, which remains the province of the jury. <u>See</u> <u>United States v. Cecil</u>, 836 F.2d 1431, 1442 (4th Cir. 1988) ("Credibility . . . is for the jury — the jury is the lie detector in the courtroom." (quoting <u>United States v. Barnard</u>, 490 F.2d 907, 912 (9th Cir. 1973))).

Thus, the MAR court neither unreasonably applied nor contradicted <u>Strickland</u> in denying Petitioner's claim that his

appellate counsel failed him by not raising Ground Six on direct appeal.

In his seventh ground for relief, Petitioner contends that the state violated his Fifth and Sixth Amendment rights by "knowingly presenting perjured testimony to the Grand Jury in order to obtain true bills of indictment . . . ." (Docket Entry 11 at 28; Docket Entry 2 at 16.) Although Petitioner did not attend the grand jury's proceedings in his case, Petitioner nevertheless argues "upon information and belief" that the state presented to the grand jury the perjured testimony of Deputy Roberts that (1) Michelle Furr observed the suspect exiting her detached garage; (2) Darren Furr provided a description of the suspect that matched Petitioner's physical appearance; and (3) Petitioner broke and entered the victims's dwelling house. (Id. at 26-27.) Petitioner bases the first two instances of that alleged perjury on Deputy Roberts' statements in the Narrative and testimony during voir dire at the motions hearing on August 26, 2010, and reasons that "the only presumption that can be made is that Deputy Roberts supplied the same false statements and fabricated evidence" before the grand jury. (Id. at 27.) As for the third example of perjury, Petitioner contends that the grand jury's superceding indictment of Petitioner for breaking or entering the victims' residence (as opposed to the original indictment for attempted breaking or entering) (compare Docket Entry 9-2 at 24, with id. at 107) means that the state must "have put forth some testimonial evidence to establish th[e] essential

element of an actual breaking and entering . . . from the one and only witness testifying before the grand jury: Deputy [] Roberts" (Docket Entry 11 at 31).

Petitioner again conflates mere inconsistencies in Deputy Roberts' statements with proof of perjury. As discussed in the context of Grounds Two and Four, such inconsistencies do not amount to perjury. See Washington, 2013 WL 1788593, at *2. Moreover, as discussed above, the jury's subsequent guilty verdicts render harmless any alleged perjury before the grand jury. See Mechanik, 475 U.S. at 70; Masiarczyk, 1 F. App'x at 213-14; Colon-Munoz, 192 F.3d at 218-19; Mount, 896 F.3d at 624.

Furthermore, although the superceding indictment charged Petitioner with first degree burglary of the victims' residence (see Docket Entry 9-2 at 24), the prosecutor notified the trial court prior to trial that the state would "be proceeding on the lesser included offense of attempted first degree burglary." (Docket Entry 9-8 at 8 (emphasis added).) In accordance with that notification, the trial court instructed the jury on attempted first degree burglary of the residence (see Docket Entry 9-10 at 90-91) and the jury found him guilty of that crime (see Docket Entry 9-2 at 180; see also id. at 187). Thus, even assuming arguendo that the state presented perjured testimony to the grand jury, Petitioner cannot demonstrate any prejudice from the issuance of the superceding indictment for first degree burglary. See United States v. Lovasco, 431 U.S. 783, 790 (1977)

("[P]roof of prejudice is generally a necessary but not sufficient element of a due process claim.").

Therefore, the MAR court reasonably applied and did not contradict Strickland in denying Petitioner's appellate ineffective assistance claim to the extent such claim relied upon appellate counsel's failure to raise Ground Seven on appeal.

Via Ground Eight, Petitioner maintains that the state violated his right to a speedy trial under the Sixth Amendment. (Docket Entry 2 at 18; see also Docket Entry 11 at 32-34.) Although Petitioner concedes that all three of his court-appointed trial counsel withdrew their representation, he nonetheless argues that, "even without considering the time spent with . . . counsel's withdrawals, the one-year delay between the time Petitioner opted to represent himself and his trial would still be sufficient to trigger a[n] . . . analysis" of the delay under Barker v. Wingo, 407 U.S. 514, 530-33 (1972). (Docket Entry 11 at 32.) Petitioner claims prejudice arising from the delay in the form of Deputy Klinglesmith's unavailability for trial and other witnesses' "inability to remember certain facts and therefore answer [the] defense's questions upon cross-examination." (Id. at 33 (citing Docket Entry 9-9 at 60-61, 119; Docket Entry 9-10 at 33-34, 64-65).) Petitioner concludes that the four Barker factors "weigh heavily against [] Respondent." (Id. at 34.)

Petitioner correctly identifies Barker as the applicable test for analysis of the right to a speedy trial. See Ricon v.

Garrison, 517 F.2d 628, 631 (4th Cir. 1975) (describing Barker as "the authoritative decision" on the speedy trial right). Under Barker, the Court must consider (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his speedy trial right; and (4) prejudice to the defendant. Barker, 407 U.S. at 522, 530–32. Under this test, a petitioner must show "that on balance, [the] four separate factors weigh in his favor." United States v. Thomas, 55 F.3d 144, 148 (4th Cir. 1995). Petitioner has failed to show that these factors weigh in his favor.

For purposes of gauging the length of the delay, the speedy trial right is "triggered by arrest, indictment, or other official accusation." Doggett v. United States, 505 U.S. 647, 655 (1992). Here, the time between Petitioner's arrest on August 20, 2009, and his trial on March 28, 2011, exceeded 20 months. A delay of such length requires consideration of the remaining Barker factors. See United States v. James, 164 F. Supp. 2d 718, 733 (D. Md. 2001) (assuming 20-month delay "presumptively prejudicial" and considering remaining three Barker factors); Mills v. Shepherd, 445 F. Supp. 1231, 1235 (W.D.N.C. 1975) (finding "[20]-month pretrial delay . . . long enough to trigger serious inquiry into the remaining factors").

Regarding the reason for the delay, the record reflects that Petitioner's requests that each of his three court-appointed attorneys withdraw and multiple pre-trial motions and filings caused the majority of the 20-month time lapse. (See generally

-41-

Docket Entry 9-2 (record on appeal); <u>see also</u> Docket Entry 9 at 18 (detailing procedural history of appointment and subsequent withdrawal of Petitioner's three court-appointed trial counsel).) Although Petitioner claims that the "[p]rosecution gained a tactical advantage of delaying the trial until the arresting officer would be out of the country and unavailable to be cross-examined" (Docket Entry 2 at 18), Petitioner has not supplied any evidence to support the notion that the prosecutors chose the March 28, 2011, trial date with knowledge that Deputy Klinglesmith would be on his honeymoon at that time, let alone that they <u>deliberately</u> chose that date to ensure that witness' unavailability. Thus, this factor weighs against Petitioner.

The Court must now consider whether Petitioner asserted his speedy trial right at any time during the delay. Petitioner's third court-appointed attorney stated at the April 27, 2010, hearing on his motion to withdraw that Petitioner had, up until that point in time, equivocated about whether to assert his speedy trial right. (See Docket Entry 9-7 at 6.) Although Petitioner contends that he first asserted his speedy trial right in May 2010 (see Docket Entry 2 at 18), no documentary evidence of such an invocation of that right appears in the record. The record does contain a statement by a prosecutor during the August 26, 2010, hearing on several of Petitioner's pre-trial motions that Petitioner had filed a motion for a speedy trial on August 17, 2010, although in that motion, Petitioner apparently stated that he would not be ready for trial until September 15, 2010.

-42-

(See Docket Entry 28 at 8.)[11]  Accordingly, as far as the record
reflects, Petitioner waited nearly one year from the date of his
arrest to assert his speedy trial right, and, even beyond that
point, agreed to further delays until at least November 2010,
occasioned by his request for transcription of Michelle Furr's
911 call.  (See id. at 50-54.)  Thus, this factor weighs in favor
of Petitioner, but not heavily so.

Lastly, the Court must address the degree to which the delay
in this case prejudiced Petitioner.  In regard to prejudice, the
United States Supreme Court has explained the following:

> We have observed in prior cases that unreasonable delay
> between formal accusation and trial threatens to
> produce more than one sort of harm, including
> "oppressive pretrial incarceration," "anxiety and
> concern of the accused," and "the possibility that the
> [accused's] defense will be impaired" by dimming
> memories and loss of exculpatory evidence.  Barker, 407
> U.S. at 532; see also Smith v. Hooey, 393 U.S. 374,
> 377-79 (1969); United States v. Ewell, 383 U.S. 116,
> 120 (1966).  Of these forms of prejudice, "the most
> serious is the last, because the inability of a
> defendant adequately to prepare his case skews the
> fairness of the entire system."  [Barker,] 407 U.S. at
> 532.

Doggett, 505 U.S. at 654 (internal parallel citations omitted).
"The burden of establishing prejudice rests on the petitioner."
Ricon, 517 F.2d at 634.  Although a petitioner need not
demonstrate actual prejudice, he or she must, at a minimum,
establish "the credible possibility of prejudice."  Id.

---

[11] The materials provided to the Court do not include a copy of such
motion.

Here, Petitioner argues that he suffered prejudice in two ways. Primarily, he alleges that the delay caused Deputy Klinglesmith's unavailability for trial, which precluded Petitioner from impeaching Darren Furr regarding his description of the suspect to Deputy Klinglesmith. (See Docket Entry 11 at 32-33.) Petitioner further emphasizes that "no other law enforcement officer other than Deputy Klinglesmith took [Darren] Furr's statement, nor imputed the description [of the suspect] through radio transmissions, nor alleged the key found on [] Petitioner unlocked a door to the Furr residence." (Id. at 33.) Additionally, Petitioner contends that several state's witnesses could not "remember certain facts and therefore answer [the] defense's questions upon cross-examination." (Id. (citing Docket Entry 9-9 at 60-61, 119; Docket Entry 9-10 at 33-34, 64-65).)

Petitioner's allegations fail to establish a "credible possibility of prejudice." Ricon, 517 F.2d at 634. The trial court did not sustain the state's objection to Petitioner's attempt to impeach Darren Furr with his statements to Deputy Klinglesmith as reflected in the investigative file report because Deputy Klinglesmith did not testify at trial; rather, the trial court correctly sustained the objection because Darren Furr did not author the document and thus lacked any foundation to testify as to why it contained certain statements. (See Docket Entry 9-9 at 120-23.)[12] Further, the record belies Petitioner's

---

[12] Deputy Roberts authored the Narrative, which contained similar statements that Darren Furr made to Deputy Klinglesmith. (See Docket Entry 11 at 41.) However, although Petitioner cross-examined Deputy Roberts, Petitioner

-44-

assertion that "no other law enforcement officer other than Deputy Klinglesmith took [Darren] Furr's statement" (Docket Entry 11 at 33) – Detective Queen answered affirmatively when Petitioner specifically asked Detective Queen on cross-examination whether he had taken a statement Darren Furr (see Docket Entry 9-10 at 33).

Similarly, the record refutes Petitioner's assertion that only Deputy Klinglesmith "alleged the key found on [] Petitioner unlocked a door to the Furr residence." (Docket Entry 11 at 33.) Deputy Roberts testified, without rebuttal, that Deputy Harless accompanied Deputy Klinglesmith into the residence to try the keys found in Petitioner's pockets on the victims' door locks (Docket Entry 9-10 at 25), and Darren Furr testified to more than one officer's presence when the key in question opened his back door (Docket Entry 9-9 at 113). Furthermore, Petitioner has not shown that Deputy Klinglesmith's absence caused other prejudice, especially given that Petitioner cross-examined the three other officers involved in the arrest (see Docket Entry 9-9 at 50-51 (Deputy Harless), 139-40 (Officer Drake), Docket Entry 9-10 at 27 (Deputy Roberts)), the officer who located Petitioner's vehicle at the scene (see Docket Entry 9-9 at 59-61 (Deputy Smith)), the officer who attempted to obtain fingerprint evidence (see Docket Entry 9-10 at 33-34 (Detective Queen)), and the officer who

_____

did not specifically question Deputy Roberts about the Narrative. (See Docket Entry 9-10 at 27.)

obtained a search warrant for Petitioner's car (see Docket Entry 9-10 at 61-67 (Detective Sergeant Pfister)).[13]

Moreover, with regard to Petitioner's allegations that the delay caused several state's witnesses to forget certain facts (see Docket Entry 11 at 33), the United States Supreme Court has cautioned that the "possibility of prejudice" arising from the fading memory of a witness generally does not suffice to support a speedy trial claim. United States v. Loud Hawk, 474 U.S. 302, 315 (1986); see also Hakeem v. Beyer, 990 F.2d 750, 763 (3d Cir. 1993) (stating "[g]eneral allegations that witnesses' memories have faded are insufficient to create prejudice, at least absent extreme delay such as eight and one-half years, or the special circumstances that existed in Doggett"). Further, Petitioner's contention that the particular length of delay in this case caused the witnesses' uncertainty as to certain facts amounts to sheer speculation. No evidence exists in the record that those witnesses ever could have recalled the particular facts at issue.[14]

_____

[13] Petitioner's claim of prejudice arising from the allegation that Deputy Klinglesmith alone "imputed [Darren Furr's] description [of the suspect] through radio transmissions" (see Docket Entry 11 at 33) lacks merit. Neither the state nor Petitioner introduced the radio transmissions as evidence during Petitioner's trial.

[14] Darren Furr's inability to recall the names of officers he spoke with in the immediate aftermath of the crimes because "he was scared out of his mind" underscores the unlikelihood that he would have ever recalled the names of the other officers and exemplifies Petitioner's inability to demonstrate that the delay caused the witnesses' inability to remember certain facts. (Docket Entry 9-9 at 119.)

On balance, the _Barker_ factors do not compel a finding that Petitioner suffered a violation of his right to a speedy trial. In other words, one can make a "reasonable argument that [Petitioner's appellate] counsel satisfied _Strickland_'s deferential standard," _Harrington_, 526 U.S. at ___, 131 S. Ct. at 788, when she declined to raise any speedy trial claim and/or that any such challenge would have failed. As such, the MAR court reasonably applied _Strickland_ in ruling against Petitioner on this basis of his ineffective assistance of appellate counsel claim.

Petitioner alleges in Ground Nine that the prosecution and the trial court violated his Fifth and Sixth Amendment rights to due process and a fair trial by the cumulative effect of "perjured, prejudicial, hearsay, irrelevant or otherwise inadmissible testimony or evidence." (Docket Entry 2 at 20; _see also_ Docket Entry 11 at 35-37.) In support of that Ground, Petitioner asserts that seven state's witnesses provided perjured testimony, that the "prosecution elicited large amounts of testimony regarding previous unrelated and unsolved burglaries" and "unrelated 'additional victims' from other similar crimes,"[15] that eight state's witnesses provided hearsay testimony regarding

---

[15] In further support of his allegation regarding inadmissible evidence of unrelated burglaries and victims, Petitioner alleges that Detective Pfister "presented . . . inadmissible testimony in violation of Federal Rules of Evidence, Rule 404(b) . . . ." (Docket Entry 11 at 36 (citing Docket Entry 9-10 at 38, 42, 45-46, 50-51, 53, 57).) A review of those transcript pages reveals, however, that the trial court sustained Petitioner's objection to such testimony under North Carolina Rule of Evidence 404(b) and ordered the testimony stricken from the record. (_See_ _id._ at 53; _see also_ _id._ at 57.)

the actions or statements of Deputy Klinglesmith, that the trial court allowed testimony about and admitted "unconstitutionally seized" evidence including keys and a sales flyer, and that the trial court allowed testimony about the invalid search warrant. (See id.)

Ground Nine lacks merit for two reasons. First, Petitioner's allegations in Ground Nine fail as utterly conclusory and unsupported under Nickerson, 971 F.2d at 1136. Second, Petitioner cannot obtain habeas relief based on allegations of the cumulative effect of trial errors, where, as here, he has failed to demonstrate any individual constitutional violations. See Fisher v. Angelone, 163 F.3d 835, 852-53 (4th Cir. 1998).

Accordingly, the MAR court correctly applied Strickland in denying Petitioner's appellate ineffective assistance claim founded on his appellate counsel's failure to raise Ground Nine on direct appeal.

Finally, Petitioner's claim that his appellate counsel provided ineffective assistance by failing to obtain a transcript of the August 26, 2010, pre-trial motions hearing (see Docket Entry 2 at 5) fails because the matters at issue in that hearing bore no relevance to the issues appellate counsel raised on direct appeal (compare Docket Entry 28 at 4-61, with Docket Entry 9-3). Moreover, to the extent that the transcript would support Petitioner's Grounds Two through Nine, as discussed above, those grounds lack merit. Thus, appellate counsel had no obligation to

-48-

obtain a transcript to aid in the development of such meritless claims.

Similarly, Petitioner's claim that his appellate counsel failed him by "waiving" his right to withdraw his appeal lacks merit. (Docket Entry 2 at 5.) In support of that claim, Petitioner asserts that he "repeatedly advised" his appellate counsel to raise the substance of Grounds Two through Nine on direct appeal, and, after reviewing her appellate brief, instructed her to move for a stay of ruling and amend the brief. (Docket Entry 2-1 at 52.) After appellate counsel refused to do so, Petitioner filed such a motion pro se, which the Court of Appeals dismissed based on Petitioner's represented status. (Id.) As a result of this alleged impasse, Petitioner alleges that he requested that his appellate counsel withdraw from his case, which she purportedly refused to do. (Id.) Petitioner claims he then submitted a motion to the North Carolina Supreme Court, seeking to either withdraw his appeal or proceed pro se, which that court denied. (Id.) Finally, Petitioner contends that he instructed his appellate counsel to withdraw his appeal but that she refused to do so. (Id.)[16]

Even assuming *arguendo* that Petitioner has sufficiently shown that his appellate counsel waived Petitioner's right to withdraw his appeal, Petitioner cannot show any prejudice arising

---

[16] The record also reflects that Petitioner filed an untitled motion in the North Carolina Court of Appeals seeking to either withdraw his appeal or represent himself, which that court dismissed, again based on Petitioner's represented status. (See Docket Entry 9-14 at 63-64.)

from that waiver to satisfy <u>Strickland</u>.  The completion of Petitioner's appeal resulted in vacation of his convictions of possession of housebreaking implements and possession of stolen property and a corresponding reduction in his sentence of 116 to 149 months.  <u>See</u> <u>France</u>, 2012 WL 3573920, at *2-3.  In contrast, had Petitioner withdrawn his appeal, any subsequent attempt to file a second appeal would likely have failed as untimely.  <u>See</u> N.C. R. App. P. 4(a)(2) (allowing criminal defendants 14 days after entry of judgment to file a notice of appeal).  Moreover, even if Petitioner could have pursued a second appeal, as discussed above, the issues he planned to raise lack merit and would not have resulted in any relief from his convictions and sentences.

In sum, Petitioner's ineffective assistance of appellate counsel claim in Ground One fails to entitle Petitioner to habeas relief.

II. Grounds Two Through Nine

Although Respondent has addressed the merits of Petitioner's Grounds Two through Nine (<u>see</u> Docket Entry 9 at 6-20), Respondent has additionally argued the procedural default of such grounds (<u>see</u> <u>id.</u> at 3-6).  Respondent bases that argument upon N.C. Gen. Stat. § 15A-1419(a)(3) and (b) (requiring denial of MAR claim where the defendant could have raised such claim in a prior appeal but did not do so, absent cause and prejudice or fundamental miscarriage of justice) and the MAR court's order which denied Petitioner's parallel claims because Petitioner

-50-

could have raised them on direct appeal. (Id. at 3; see also Docket Entry 9-14 at 3-4.)

In light of that procedural bar, Petitioner must demonstrate either that cause for and prejudice from his procedural default exists or that the refusal to address the defaulted claim will result in a fundamental miscarriage of justice. Longworth v. Ozmint, 377 F.3d 437, 447–48 (4th Cir. 2004). Here, Petitioner asserts that "sufficient cause for excusing procedural default exists when attorney error or oversight rises to the level of ineffective assistance of counsel in violation of the Sixth Amendment." (Docket Entry 11 at 8 (citing Murray v. Carrier, 477 U.S. 478, 485 (1986), and House v. Bell, 547 U.S. 518, 536-37 (2006)).) In Ground One of his instant Petition, Petitioner has indeed alleged that his appellate counsel provided ineffective assistance by failing to raise the substance of Grounds Two through Nine on direct appeal (see Docket Entry 2 at 5 and ¶ 12(c)(2) (Grounds Two through Nine)), which can constitute grounds to excuse a procedural default, see Cole v. Branker, 328 F. App'x 149, 158 (4th Cir. 2008) (recognizing that "[t]he Supreme Court has 'acknowledged that in certain circumstances counsel's ineffectiveness in failing properly to preserve [a] claim for review in state court will suffice' to establish cause for a procedural default" (citing Edwards v. Carpenter, 529 U.S. 446, 451 (2000))).

However, as discussed above, because Grounds Two through Nine lack merit, Petitioner's appellate counsel could not have

provided ineffective assistance for failing to raise such futile claims. Thus, Petitioner's allegations that his appellate counsel supplied ineffective assistance cannot constitute cause sufficient to excuse his default. See Dunaway v. Director of Va. Dep't of Corrs., 414 F. App'x 560, 562 (4th Cir. 2012) ("Because his ineffective assistance claim fails, [the petitioner] has also failed to show cause and prejudice excusing the procedural default.")

In sum, Grounds Two through Nine fail as procedurally barred, as well as on the merits.[17]

## Conclusion

**IT IS THEREFORE ORDERED** that Petitioner's "Motion for Leave to Expand the Record" (Docket Entry 12), "Motion for Leave to Invoke Discovery" (Docket Entry 13), "Motion for Evidentiary Hearing and for Appointment of Counsel" (Docket Entry 14), "Request for Order for Production of Documents" (Docket Entry 15), "Request for Leave to Amend" (Docket Entry 22), and "Motion for Leave to Amend and Proposed Amendment" (Docket Entry 35) are **DENIED.**

**IT IS RECOMMENDED** that Respondent's Motion for Summary Judgment (Docket Entry 8) be granted, that the Petition (Docket

---

[17] In view of the undersigned's recommendation that the Petition lacks merit, no basis exists to appoint counsel, to hold an evidentiary hearing, or to order the production of documents. Accordingly, the undersigned denies Petitioner's "Motion for Leave to Invoke Discovery" (Docket Entry 13), "Motion for Evidentiary Hearing and for Appointment of Counsel" (Docket Entry 14), and "Request for Order for Production of Documents" (Docket Entry 15).

Entry 2) be denied, and that this action be dismissed without
issuance of a certificate of appealability.


                              /s/ L. Patrick Auld
                              L. Patrick Auld
                         United States Magistrate Judge


May 7, 2015